### State of Vermont v. Paul M. Kelly

[312 A.2d 906]

No. 32-72

Present: Barney, Smith, Keyser and Daley, JJ., and Billings, Supr. J.

Opinion Filed December 4, 1973

*Neil S. Moss,* State's Attorney, for the State.

*Langrock & Sperry,* Middlebury, for Defendant.

**Smith, J.** This appellant was convicted by a jury in the District Court of Vermont, Bennington Circuit, on August 11, 1971, of the sale of a regulated drug. He has appealed to this Court on several grounds.

The prosecution in this case relied heavily on the testimony of a state police trooper that he had purchased the regulated drug from the defendant. The defense subpoenaed two judges from other district courts and wished to elicit from them testimony as to the reputation of the particular trooper for truth and veracity. In this way the defense hoped to impeach the testimonial credibility of that trooper.

The court below ruled that judges have an absolute privilege not to testify. We disagree.

It is the rule in Vermont that a judge may not be a witness in a cause before him. See *Ricci* v. *Bove's Administrator*, 116 Vt. 406, 412, 78 A.2d 13 (1951); *In re Hildreth Estate*, 113 Vt. 26, 29, 28 A.2d 633 (1942); and *State* v. *Bissell*, 106 Vt. 80, 95, 170 A. 102 (1934).

We know, however, of no Vermont rule generally exempting judges from testifying. Absent any such special exemption, we believe that the general rules requiring subpoenaed persons to appear and testify apply to judges. See generally, 6 J. Wigmore, Evidence § 1909 (3d ed. 1940).

We note that the Franklin Municipal Court Judge testified in *In re Monaghan*, 126 Vt. 53, 63, 222 A.2d 665 (1966).

The defense in this case sought to introduce the testimony of the two subpoenaed judges that the reputation of the particular trooper witness for truth and veracity in the "criminal justice community" was poor. The court below refused to compel the testimony of the judges, on the basis of a judicial privilege against testifying.

Although we believe it was error to refuse to compel the testimony of the judges, we do not believe that error to have been prejudicial to this defendant. We do not believe that the testimony sought to be introduced by the defendant was admissible under these facts and circumstances.

Reputation evidence of character is a well recognized exception to the hearsay rule. In the usual circum-

stance the witness testifies to the reputation of a particular person in a particular community based on what that witness has heard said about that person. The basis for this exception to the hearsay rule is really necessity and trustworthiness.

Evidence of the character of a particular witness is extremely useful to the trier of fact. This evidence is not normally available in any other way. A reputation for a particular moral or character trait is usually the result of observed specific acts. The community notes and discusses these acts. The community must deal with that person on a day to day basis. In dealing with that person they must have some personal judgment as to his nature and character.

■ Such a reputation for a particular moral or character trait is generally held to be reliable in the following circumstances. That reputation must be general in the community. It must be based on the need of the people in the community to deal with the person who is the subject of the reputation. That reputation must be developed over a sufficient time to give a true opportunity to judge character. That reputation must be based on a community of enough individuals with the required contact with the subject to be insulated from the vagaries of individual personality conflicts. That reputation must be for such character traits as are broad enough to be subject to observation by a community.

Where these circumstances are met, the resulting reputation as to a particular character or moral trait of a particular subject will be reliable. The community will rely on that reputation in its dealings with the subject, and the law of evidence is justified in relying on that reputation.

■ Reputation evidence is, of course, merely hearsay. It should therefore not be introduced unless it is important to the trier of fact and unless the particular proposition to be proved can be proved in no other manner.

For general discussion, see 5 J. Wigmore, Evidence §§ 1609, 1610 and 1614 (3d ed. 1940); and Ladd, *Techniques and Theory of Character Testimony*, 24 Iowa L.Rev. 498 (1939).

 The normal community for the proof of reputation is the community in which the subject resides. This was the applicable community in *In re Monaghan, supra,* and in *State* v. *Gomez,* 89 Vt. 490, 96 A. 190 (1950). Unquestionably, as stated by appellant, the physical location of residence is not the only criteria for determining the applicable community from which a reputation may spring. See *In re Wright,* 131 Vt. 473, 310 A.2d 1, 9 (1973). There the applicable community was the Vermont Bar. Pedigree and death may be proved by reputation in the family. See *In re Hurlburt's Estate,* 68 Vt. 366, 368–69, 35 A. 77 (1895). This Court there pointed out that such a reputation is reliable because the family has an interest in knowing those facts. This Court has never directly so stated, but it has implied that the business associates of a subject may be a sufficient community for an admissible reputation. See *Bank of Middlebury* v. *Town of Rutland,* 33 Vt. 414, 430 (1860).

 The burden of proving admissibility lies with the proponent of evidence. *Standish* v. *Newton,* 103 Vt. 85, 88, 152 A. 41 (1930). We believe that this is a situation where the trial court has discretion in passing on admissibility. *Long* v. *Leonard,* 113 Vt. 258, 261, 32 A.2d 679 (1943).

 Here it does not appear from the record that the appellant showed that this reputation evidence would be admissible. We see no evidence that the "criminal justice community" is a community of sufficient size, interest, duration, and opportunity to observe, to have formulated a trustworthy reputation. There is no showing of the limits of such a community. Even if there is such a community, there is no showing that the two judges here subpoenaed would be part of it. There is no showing that the evidence sought to be introduced, that is the impeachment of the credibility of the subject witness, is unavailable in any other fashion.

These would be sufficient grounds for the court below to have excluded the evidence which the appellant proposed to introduce through the testimony of these two judges. The court below declined to enter into a statement of the various reasons why it felt that this evidence could not be presented, and the appellant waived that statement.

■ The trial court below reviewed the admissibility of this offered evidence and declined to accept it. Absent a showing of abuse of discretion, not here shown, we must affirm.

■ ■ The erroneous ruling of the court below that judges have a privilege against testifying did not prejudice this appellant. The evidence which these judges were to give was not admissible. Without a showing of prejudice, the burden of which is on appellant, error is not grounds for reversal. *State* v. *Lacillade,* 131 Vt. 161, 165, 303 A.2d 131 (1973). A technical error of the court below may be affirmed where the court has achieved the right result for the wrong reason. *Braune* v. *Rochester,* 126 Vt. 527, 533, 237 A.2d 117 (1967); *Fuller* v. *City of Rutland,* 122 Vt. 284, 287, 171 A.2d 58 (1961).

■ The appellant then argues that the refusal to compel the testimony of the two judges here involved violates his Sixth and Fourteenth Amendment rights to have compulsory process for obtaining witnesses in his favor. This right is also guaranteed by Article 10 of the Vermont Constitution. Such compulsory process is only required where the witnesses to be called will offer competent and material testimony. *State* v. *Dragon,* 130 Vt. 334, 340, 292 A.2d 826 (1972). The burden is on the appellant to show that competency and materiality in requiring compulsory process. *Id.* In this situation, where the testimonial evidence to be offered by the witnesses is inadmissible, the constitutional requirements are not violated.

After the court below ruled that the judges would not be required to take the stand, the appellant moved for a continuance to see if he could find and call witnesses who would provide the same evidence. The court refused the continuance, and the defendant claims that this was error.

■ ■ Such a continuance is in the discretion of the trial court. The criteria for such a continuance were outlined in *State* v. *Pierce,* 88 Vt. 277, 280, 92 A. 218 (1914). The criteria of that case have been followed in *Land Finance Corp.* v. *St. Johnsbury Wiring Co.,* 100 Vt. 328, 333, 137 A. 324 (1927); and *State* v. *Maguire,* 100 Vt. 476, 480, 138 A.

741 (1927). Such a continuance can be granted where a particular, known person is needed to supply missing evidence.

The appellant conceded in his argument to the court below that he did not know if substitute witnesses could be found. He referred to "opportunity to explore the possibility."

We do not think that the trial court abused its discretion in denying a continuance where the jury had been impaneled and where there was only a possibility of finding additional witnesses.

Appellant asserts error in the denial of a hearing on probable cause to issue an information. The transcript indicates that the motion was made after jury drawing and moments before opening statements.

Probable cause is required to begin a prosecution, and this may be examined on motion. *State* v. *Perry,* 131 Vt. 75, 76, 300 A.2d 615 (1973). The purpose of such a requirement is to assure that persons are not proceeded against criminally without good reason. This is particularly aimed at the holding of a person on spurious or insufficient charges while examining him to find grounds for actual prosecution. *In re Davis,* 126 Vt. 142, 143, 224 A.2d 905 (1966). A challenge to probable cause to prosecute is a challenge to the arresting process, not a challenge to the merits of the allegation of crime. *Id.,* 126 Vt. at 145.

Normally a hearing on probable cause to arrest is held long before a trial. In *State* v. *Perry, supra,* the defendant asked for this hearing "before" trial. The motion was denied. "Meanwhile", he spent seven months in custody. *Id.*

We see no usefulness in a probable cause hearing of this type at the time of trial. When the jury is drawn, the witnesses convened, and the trial momentarily to begin, there is no longer a possibility of continued incarceration on spurious or insufficient charges. The merits of the charges are about to be determined. The case has gone from the prosecution to the court.

The prosecution's case at trial is tested by a far more stringent test than "probable cause". At this point the pros-

ecution must show that its case is sufficient to go to the jury. Several trial motions can test this. The prosecution must then convince the jury "beyond a reasonable doubt."

Surely if the case is sufficient to go to the jury, and if the jury finds guilt beyond a reasonable doubt, then there was probable cause to prosecute. If the court and jury do not so find, then perhaps there was no probable cause, but the defendant will go free.

The defendant unquestionably has a right to contest probable cause to prosecute at the time the prosecution begins. This is a waivable right. *In re Morris*, 126 Vt. 297, 298, 229 A.2d 244 (1967).

We do not categorically say that probable cause to prosecute cannot be tested at the trial stage. We do say that on these facts no continued incarceration or harassment by spurious or insufficient prosecution appears possible.

The commencement of a criminal action without probable cause is a serious matter indeed. When a defendant believes that this is being done to him, he should raise this issue as soon as possible. The facts of this case are that the issue was not raised until the time of trial. Without more, we believe that the defendant under such facts has waived his right to a hearing on probable cause to prosecute.

*Judgment affirmed.*